## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RUSSELL WHITEHEAD,** | * | **CIVIL ACTION NO.** |
| *Plaintiff,* | * | |
| | * | **JUDGE** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE** |
| **BASF CORPORATION** | * | |
| *Defendant* | * | |
| | * | **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Russell Whitehead, Plaintiff herein, who respectfully states and avers the following:

## PARTIES

### 1.

Plaintiff, Russell Whitehead (hereinafter "Mr. Whitehead" or "Plaintiff"), is a Caucasian male of the full age of majority, presently residing and domiciled in East Baton Rouge Parish, State of Louisiana.

### 2.

Made Defendant herein is BASF Corporation, (hereinafter "BASF" or "Defendant"), a foreign corporation that manufactures and markets chemicals, polymers and consumer goods throughout the United States and maintains its principal place of business in Florham Park, New Jersey, and is authorized to do and doing business in the State of Louisiana, specifically, Geismar, Louisiana.

## FACTUAL BACKGROUND

3.

Mr. Whitehead is a Chemical Engineer by means of education and trade with nearly 25 years of experience in the chemical production industry. During his tenure as a chemical engineer, Mr. Whitehead has been employed by several industry leading corporations and has consistently performed his job duties admirably, without complaint while carrying out his responsibilities in strict compliance with his employer's policies and procedures.

4.

After working for Eastman Chemical Company for nearly 5 years, on or about January 4, 2022, Mr. Whitehead accepted an employment opportunity with Defendant as a Director of Production in the Isocyanates group in Geismar, LA.

5.

Being completely apprised of Mr. Whitehead's standing and position at Eastman, Defendant was able to convince Mr. Whitehead to leave Eastman after Defendant, through its agents, managers and supervisors, promised Mr. Whitehead that his longevity as a BASF employee, his earning potential and level of responsibility would be determined by his work ethic, his ability to lead and the productivity of the team he would supervise.

6.

Not surprisingly, on day one, Mr. Whitehead "hit the ground running." Immediately, after meeting several of the engineers he would be responsible for leading and or working with, Mr. Whitehead was tasked with supervising a team of engineers and assisting other BASF employees with maximizing the project capacity of various units within the Geismar manufacturing facility. Notably, one of the engineers that he was introduced to soon after being

2

hired was Ms. Roshaunda Jackson, an African American female. Ms. Jackson was a Technology Sr. Engineer.

7.

Mr. Whitehead and his colleagues were required to work 12hour days, 7 days per week for nearly 6 weeks without a break. At all times relevant Mr. Whiteheads' supervisor was Defendant's Vice President of Operations, Amanda Garner.

8.

Because of Mr. Whitehead's work ethic, attitude and productivity, Ms. Garner believed him to be a positive and productive addition to Defendant's operations team. In fact, because of Mr. Whitehead's job performance, Ms. Garner strongly considered Mr. Whitehead's recommendations to fill Defendant job vacancies with his former colleagues at Eastman.

9.

Importantly, when Defendant employed Mr. Whitehead, Defendant required its employees to dawn face masks both inside and outside the various buildings at the Geismar plant location. Additionally, nearly 100% of all personnel meetings were conducted virtually, audio only. Consequently, from the day he was hired, Mr. Whitehead never held a face to face meeting with any member of his team.

10.

Consequently, because of mask and meeting protocols in place, the only individuals that consistently visited Mr. Whiteheads office were members of Defendant's janitorial staff.

11.

On or about March 16, 2022, without any prior notification, Roshaunda Jackson, stopped by Mr. Whitehead's office.  Prior to March 16th, Ms. Jackson had never stopped by or visited Mr. Whitehead in his office.

12.

When Ms. Jackson arrived at Mr. Whitehead's office door, she knocked.  Mr. Whitehead heard the knock.  Because only members of Defendant's janitorial staff visited his office, Mr. Whitehead, after hearing the knocked, turned away from the door and picked up his trash can to hand it to whom he believed to be a member of Defendant's janitorial staff.

13.

When Mr. Whitehead, while seated in his chair, turned around to face the door with the trash can in his hand, he recognized that the individual at his door was Ms. Jackson.  He then immediately placed the trash can on the floor and engaged in a 3-5minute conversation with Ms. Jackson about work related matters.  At the conclusion of the conversation, Ms. Jackson left and Mr. Whitehead continued performing his daily tasks.

14.

Not many days later, Mr. Whitehead was contacted by a member of Defendant's Human Resource Department.  To Mr. Whitehead's shock, Defendant's HR representative informed Mr. Whitehead that he had been tasked with investigating Mr. Whitehead's March 16th encounter with Ms. Jackson.

15.

Put simply, Mr. Whitehead was being investigated for allegedly "acting upon an assumption that a black female at his door could not have been anyone other than housekeeping" or a janitor.

16.

On or about March 28, 2023, as a result of Defendant's investigation, Mr. Whitehead was terminated for allegedly violating Defendant's "workplace culture in which all employees are to treat each other with dignity and respect."

17.

Mr. Whitehead sought to resolve Defendant's unfounded and unsupported adverse action internally through Defendant's Human Resources Department but was forced to lodge a formal complaint with the Equal Opportunity and Employment Commission ("EEOC") and was issued a Notice of Right to Sue.

18.

All of the actions complained of herein were undertaken with malice and/or reckless indifference to Mr. Whitehead's civil rights in direct violation of law. By the conduct described above, as engaged in by Defendant's agents and employees and for which Defendant is fully liable under the doctrine of respondent superior, Defendant engaged in unlawful employment practices against Plaintiff simply because he is Caucasian.

## <u>JURY DEMAND</u>

19.

Plaintiff hereby demands trial by jury of all issues so triable herein.

**WHEREFORE**, Plaintiff, Russell Whitehead, prays that Defendant be required to appear and answer Plaintiff's Complaint and Jury Demand and, after due proceedings had and legal delays, there be judgment rendered herein in favor of Plaintiff and against Defendant as detailed in the foregoing Complaint and Jury Demand, in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, attorneys' fees and for any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

/s/G. Karl Bernard_____
G. Karl Bernard (#24294)
KARL BERNARD LAW, LLC
1615 Poydras Street, Suite 101
New Orleans, LA 70112
Telephone: 504-412-9953
Facsimile: 504-412-8088
Email: karlb@karlblaw.com

**Attorney for Plaintiff**